**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**ATHENS DIVISION**

DORIS E. ADDISON                        :
                                        :
            Plaintiff,                  :
                                        :
v.                                      :          3:11-CV-3 (CAR)
                                        :
                                        :
INGLES MARKETS, INC.,                   :
                                        :
            Defendant.                  :
_____ :

*ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT*

In this employment discrimination case, Plaintiff Doris Addison complains that

her employer, Ingles Markets, Inc., unlawfully terminated her employment on the basis

of her race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*

("Title VII"), and her age in violation of the Age Discrimination in Employment Act of

1967, 29 U.S.C. § 621 *et seq.* ("ADEA").   Defendant has filed the current Motion for

Summary Judgment [Doc. 32] and a Motion to Strike [Doc. 40] certain portions of the

declarations submitted by Plaintiff and a former co-worker, Brenda White.   Having

read and considered the Motions, the record in this case, the applicable law, and the

arguments of the parties, the Court finds that Plaintiff fails to raise genuine issues of

material fact on any of her claims and therefore **GRANTS** Defendant's Motion for

Summary Judgment [Doc. 32].   As discussed below, the Court **DENIES** Defendant's

1

Motion to Strike [Doc. 40].

## MOTION TO STRIKE

Before this Court can set forth the facts in the light most favorable to Plaintiff and address the merits of Defendant's Motion for Summary Judgment, the Court must first address Defendant's Motion to Strike the declarations of Plaintiff and Brenda White and determine whether such evidence is admissible.

Federal Rule of Civil Procedure 12(f) sets forth the standard for motions to strike. "Upon motion made by a party before responding to a pleading . . . the court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."   As used in the Federal Rules of Civil Procedure, the word "pleading" is a term of art that is limited to "(1) a complaint; (2) an answer to a complaint; (3) an answer to a counterclaim designated as a counterclaim; (4) an answer to a crossclaim; (5) a third-party complaint; (6) an answer to a third-party complaint; and (7) if the court orders one, a reply to an answer."   Fed. R. Civ. P. 7(a); see Mann v. Darden, 2009 U.S. Dist. LEXIS 63044, at *1-2 (M.D. Ala. July 6, 2009) (citing 2 James Wm. Moore, et. al., Moore's Federal Practice § 12.37[2] (3d ed. 1999) ("Only material included in a 'pleading' may be subject of a motion to strike. . . . Motions, briefs or memoranda, objections, or affidavits may not be attacked by the motion to strike.")).   A declaration in support of a motion for summary judgment is not a pleading and is therefore an

inappropriate target of a motion to strike.   Indeed, Rule 56 provides that "[a] party may *object* that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2) (emphasis added).   The Advisory Committee's note specifies further that such an objection "functions much as an objection at trial, adjusted for the pretrial setting" and that *"[t]here is no need to make a separate motion to strike."*   Id. advisory committee's note (emphasis added).

"Nonetheless, it is still common for parties to file motions to strike directed at matters that are not contained in pleadings."   Ross v. Corp. of Mercer Univ., 506 F. Supp. 2d 1325, 1333 (M.D. Ga. 2007).   In such cases, courts tend to treat motions to strike as objections to the challenged portions of affidavits.   Id.   Accordingly, the Court will construe Defendant's Motion to Strike as evidentiary objections.

Brenda White's Declaration

Defendant first objects to Brenda White's declaration.   Brenda White worked with Plaintiff in the deli section of Defendant's store.   Plaintiff's attorney prepared and filed Ms. White's declaration in opposition to Defendant's Motion for Summary Judgment.   Defendant argues that the declaration should be excluded in its entirety, as Plaintiff's counsel withheld the declaration from production in violation of the Federal Rules of Civil Procedure.   Moreover, Defendant claims that the declaration contains inflammatory racial epithets and allegations which are flatly inconsistent with Ms.

White's subsequent deposition testimony.

On June 14, 2011, Defendant issued its first set of interrogatories and requests for production to Plaintiff which required Plaintiff to "[i]dentify each and every oral or written statement Plaintiff has obtained from any person regarding the subject matter of this action. . . ." (Def.'s First Set of Interrogatories, Doc. 40-1).

Approximately a month and a half later, on July 29, 2011, Plaintiff's counsel prepared, and Brenda White signed, a declaration in which, relevant to Defendant's objections, Ms. White states that she overheard a conversation between an elderly white customer and Mr. Brian Worley, the District Manager who terminated Plaintiff. Specifically, Ms. White states that she "was present in the deli sometime after the 2008 election.   An elderly white customer who frequently came in the store, saw Mr. Worley and said that 'nigger [Pres. Obama] stole the election.' He [the white customer] said 'bunch of thieving niggers – just like them' [pointing to the remaining deli staff who stayed].   Mr. Worley said 'these do not steal or I'll throw them out on the street.'" (White Decl., Doc. 36-3).

Four days after preparing the declaration, on August 2, 2011, Plaintiff's attorney supplemented her responses and objections to Defendant's first set of interrogatories, and Plaintiff's counsel revealed that she had "obtained the written statement of Brenda White on July 29, 2011." (Pl's Supplement to Pl's Responses and Objections to

Defendant's First Set of Interrogatories, Doc. 40-2).   However, Plaintiff's attorney did not produce the statement because she declared it was privileged as attorney work product.   Thus, on September 1, 2011, approximately one month *after* Ms. White signed her declaration, Defendant deposed Ms. White.   During her deposition, Ms. White did not mention the conversation between District Manager Worley and the elderly white customer.   Defendant did not see the contents of Ms. White's declaration until Plaintiff filed it in opposition to Defendant's Motion for Summary Judgment.

In its Motion to Strike, Defendant first contends that Plaintiff's counsel improperly and unreasonably relied on the work product doctrine so that Defendant could not address Ms. White's declaration during the discovery period, and therefore Ms. White's Declaration should be excluded under Rule 26(a) and Rule 37(c) for Plaintiff's failure to provide the declaration during discovery.

Rule 26(a) requires that a party disclose all names of witnesses upon whose testimony the party intends to rely at trial or during the pretrial motions stage of the case.   Moreover, a party "must supplement or correct its disclosure . . . in a timely manner if the party learns that in some material respect the disclosure . . . is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing."   Fed. R. Civ. P. 26(e)(1)(A).   The standard for determining whether to exclude evidence under Rule

37(c)(1) is whether a party's failure to identify a witness as required by Rule 26(a) or (e) is "substantially justified or is harmless."   Fed. R. Civ. P. 37(c)(1) (emphasis added); see also Reese v. Herbert, 527 F.3d 1253, 1265-66 (11th Cir. 2008).

This Court has broad discretion in deciding whether a failure to disclose evidence necessitates exclusion under Rule 37(c)(1).   See, e.g., Mee Indus. v. Dow Chem. Co., 608 F.3d 1202, 1222-23 (11th Cir. 2010).   To avoid exclusion, the party allegedly failing to comply with Rule 26 bears the burden of establishing that the failure was substantially justified or harmless.   Mitchell v. Ford Motor Co., No. 08-10302, 2009 WL 593897, at *3 (11th Cir. Mar. 9, 2009).

In exercising its broad discretion, the Court declines to exclude Ms. White's declaration. Plaintiff's counsel did not produce Ms. White's declaration citing that it was privileged as attorney work product. Defendant argues that the statement is not work product and should have been produced.   The Court finds it unnecessary to determine whether the declaration is, in fact, work product because Plaintiff's failure to produce the declaration is harmless.   Even considering all of the statements in Ms. White's declaration, Plaintiff fails to create any genuine issue of material fact as to either her race or age discrimination claim, and Defendant is entitled to summary judgment on all of Plaintiff's claims.   Thus, the failure to provide the declaration is harmless.

Defendant next argues that Ms. White's declaration should be excluded due to inconsistencies with her deposition. The Eleventh Circuit has explained that a court may only disregard declarations when a party contradicts prior deposition testimony without providing a valid explanation.   See Van T. Junkins & Assoc. v. U.S. Indus., Inc., 736 F.2d 656 (11th Cir.1984) (holding that when "a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact, that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony.").   However, there is a clear distinction between discrepancies that "create transparent shams" and discrepancies that "create an issue of credibility or go to the weight of the evidence." Tippens v. Celotex Corp., 805 F.2d 949, 953 (11th Cir.1986).   The Eleventh Circuit recognizes that:

> [t]o allow every failure of memory or variation in a witness's testimony to be disregarded as a sham would require far too much from lay witnesses and would deprive the trier of fact of the traditional opportunity to determine which point in time and with which words ... the affiant ... was stating the truth.

Id. at 953–54.   Accordingly, the Court should not exclude an affidavit if it "supplements earlier testimony, presents a variation of testimony, or represents instances of failed memory." Pashoian v. GTE Directories, 208 F. Supp. 2d 1293, 1298–99 (M.D. Fla. 2002) (citing Rollins v. TechSouth, Inc., 833 F.2d 1525, 1530 (11th Cir. 1987)).   Instead, such "[v]ariations in witness testimony and failure of memory throughout the course of

7

discovery" create issues of credibility of witnesses and weight of evidence that are resolved by the trier of fact. Tippens, 805 F.2d at 954.

Applying the foregoing principals to the instant case, the Court first questions whether it has the authority to exclude Ms. White's declaration on these grounds at all. Clearly, this Court may disregard statements that contradict *prior* deposition testimony; however it is unclear whether it may disregard statements that contradict *subsequent* deposition testimony, as is the case with Ms. White's declaration.   However, even if the Court has the authority to exclude the declaration on these grounds, it would not.   The Court finds that any inconsistencies and discrepancies in Ms. White's declaration go to the weight and credibility of the evidence.   The declaration and the deposition are not "wholly inconsistent," and therefore the Court will consider it in determining Defendant's Motion for Summary Judgment.

Plaintiff's Declaration

Defendant also objects to portions of Plaintiff's declaration.   On July 14, 2011, Plaintiff gave her sworn deposition testimony.   Approximately four months later, on November 11, 2011, Plaintiff signed the declaration that was filed in opposition to Defendant's Motion for Summary Judgment.   Defendant seeks to exclude Plaintiff's Declaration arguing that it "wholly contradicts" her prior deposition testimony. Defendant contends that throughout her deposition, Plaintiff had multiple opportunities

8

to provide specific examples of discriminatory occurrences during the time she was employed; however, in her deposition, Plaintiff did not provide the specificity of examples that she later provided in her declaration.   Thus, Defendant appears to contend that the declaration must be excluded as a "sham affidavit."

The "sham affidavit" rule is designed to prevent a party from fabricating material issues of fact in response to a motion for summary judgment.   Van T. Junkins, 736 F.2d at 656-57.   It permits a district court to disregard an affidavit that "contradict[s] [the affiant's prior] testimony on deposition."   Id.   For the rule to apply, the affidavit must be "inherently inconsistent" with the affiant's deposition testimony.   Id. at 658.

Having reviewed Plaintiff's deposition and her declaration, the Court finds that Plaintiff's declaration is not "inherently inconsistent" with her prior deposition testimony.   Van T. Junkins, 736 F.2d at 658.   While some statements in her declaration may be "at odds" with her earlier deposition testimony, "[a] statement in an affidavit that is merely at odds with an earlier deposition testimony is not grounds for exclusion." Tippens v. Celotex Corp., 805 F.2d 949, 954 (11th Cir. 1986).   Thus, the Court will consider Plaintiff's declaration in ruling on the Motion for Summary Judgment.

## FACTS IN THE LIGHT MOST FAVORABLE TO THE NON-MOVING PARTY

The facts in the light most favorable to Plaintiff are as follows:

9

Defendant initially hired Plaintiff, who is African American, as a part time deli cook at Defendant's Store No. 65 in Elberton, Georgia (the "Store") on September 8, 1986. In August 1992, Defendant promoted Plaintiff to full-time Deli Manager.   However, in 1996, Plaintiff asked to be demoted because she was overwhelmed with family obligations.   Management honored her request, but Plaintiff voluntarily left her job for another employment opportunity.

Only a short time after she resigned, on June 27, 1996, Brian Worley, a white male, who at that time was the Store Manager, re-hired Plaintiff as a full-time Deli Clerk.   It is undisputed that Plaintiff was re-hired at Mr. Worley's request.   While Plaintiff was shopping in the Store, Mr. Worley asked her to come back to work, and she agreed.   At the time Plaintiff was re-hired, Mr. Worley issued her a copy of the Associate Handbook. The Handbook states "[w]illful or deliberate damage to or theft of company property or the property of another associate will be grounds for dismissal." (Moore Aff., Ex. 2, Doc. 34-1).

Sometime after Plaintiff was re-hired, Defendant promoted Mr. Worley to District Manager.   The Store remained in the territory he managed.   Thereafter, and at all times relevant to the incidents herein, the Store Manager was Tim Foster, a white male, and the Deli Manager was Jackie Willis, a black female.

Plaintiff states that while working in the deli, she overheard District Manager Worley make derogatory remarks about prominent African Americans in the media such as President Obama, Jesse Jackson, and Colin Powell, referring to them as monkeys and boys.   Allegedly, these types of comments increased after President Obama was elected.   Apparently, sometime after the 2008 election, Brenda White, who worked in the deli section with Plaintiff, overheard the conversation between district manager Worley and an elderly white customer who frequented the Store.   As discussed previously, the elderly white customer said to Mr. Worley, "that nigger [Pres. Obama] stole the election." (White Decl., Doc. 36-3).   The customer then pointed to the deli staff, who were mostly black, and said "bunch of thieving niggers – just like them." Id.   Mr. Worley then replied, "these do not steal or I'll throw them out on the street." Id.

In February 2009, Plaintiff and Ms. White allegedly overheard a conversation between Worley and the Deli Manager, Jackie Willis, who is black, about Ms. Willis not hiring white employees.   They state they heard district manager Worley say to Ms. Willis: "Why is the deli so black?   Why do you continue to hire those people? Do you have a problem hiring whites?" (Pl. Decl., Doc. 36-2).   Both Ms. White and Plaintiff state that they voiced their concerns and disapproval of these comments to Mr. Worley.

11

Providing no other details, around this time, in February 2009, Plaintiff states that Melanie Moore, a younger, white, part-time employee was selected for the deli assistant manager position.   Plaintiff states that she was not selected.

In July 2009, Mr. Worley received an anonymous phone call that two employees at the Store, specifically Jodi T. (white, 30 yrs old) and Jessica L. (white, 36 yrs old) were stealing groceries.   Specifically, he received information that they were "sliding groceries."   "Sliding groceries" is where a customer will have multiple groceries, and the cashier will scan and charge that customer for one grocery item and not scan the next; instead the cashier will just "slide" it by the scanner without ringing it up, so the customer does not get charged.   After receiving the anonymous tip, Mr. Worley called Defendant's Loss Prevention Investigator, Travis Morgan, and informed Mr. Morgan of his concerns regarding dishonest acts occurring at the Store.

On July 11, 2009, Mr. Morgan initiated a Loss Prevention Investigation, specifically investigating the "hand-keyed transactions" in the Store. His goal was to determine which employees were reducing and "sliding" merchandise for themselves and other employees.   As part of his investigation, he pulled records linked to certain registers showing an abundance of hand-keyed transactions and pulled the surveillance tapes to determine whether the transactions properly reflected the items purchased. Unfortunately, the tapes showed that several employees had performed improper and

dishonest hand-keyed transactions and engaged in merchandise sliding.   The investigation produced 14 people who were sliding merchandise or otherwise committing dishonest acts on the cash registers.   All 14 employees, including Plaintiff, were terminated from employment.

Regarding Plaintiff, the deli register showed a $1.00 hand-keyed transaction made on July 7, 2009, at 9:47a.m.   When viewing the corresponding surveillance tape, investigator Morgan could clearly see Plaintiff grab a beverage out of the drink machine sitting on the deli counter which cost $1.38.   Plaintiff then walked over to the deli register and hand-keyed in "$1.00 Cold Deli."   She paid for her drink with $1.05 and retrieved $.02 back in change.

Jackie Willis, the Deli Manager, had previously instituted an employee discount policy whereby deli employees paid a discounted amount for food items purchased from the deli and consumed on the premises.   Ms. Willis had apparently instructed Plaintiff to "just pay something for her deli food or drink, so they won't say you're stealing." (Pl. Decl., Doc. 36-2). The evidence shows that both Store Manager Foster and District Manager Worley consumed deli food and drink items without paying full price.

On July 27, 2009, investigator Morgan notified Store Manager Foster of his findings regarding Plaintiff's hand-keyed transaction. As part of the investigation, Mr. Morgan interviewed all 14 employees who were discovered of dishonest conduct during

13

the investigation, including Plaintiff.   While escorting Plaintiff to the loss prevention

interview with investigator Morgan, Store Manager Foster instructed her not to "call any

names because these things go on and on," which Plaintiff interpreted to mean that she

was not to tell anyone who all discounted deli food items. (Pl. Decl., Doc. 36-2).   In

response to investigator Morgan's question why she only paid a dollar and not full price

for the drink, Plaintiff replied, "I got a drink, had only $1.00.   I was told to pay

something." (Foster Depo., Doc. 36-9).   In response to Mr. Morgan's question as to who

told her it was okay to follow the policy of discounting deli foods consumed on the

premises, Plaintiff told him she could not tell him because Foster had instructed her not

to give any names.   Plaintiff then signed a statement saying, "I got a drink had only

$1.00.   I was told to pay something."   (Moore Aff., Ex. 3, Doc. 34-1).

After meeting with Plaintiff, investigator Morgan spoke with Store Manager

Foster about Plaintiff's admission that she did not pay full price for the beverage.   Mr.

Foster immediately suspended Plaintiff for several days without pay.   Indeed, Mr.

Foster suspended without pay *every* employee who, like Plaintiff, issued a written

statement admitting to his or her dishonest act during the loss prevention investigation.

Thereafter, District Manager Worley directed Store Manager Foster to terminate all 14

employees discovered committing dishonest acts, including Plaintiff, in accordance with

Defendant's policy that theft of company property would be grounds for dismissal.

Indeed, Mr. Worley previously had met with his store managers and informed them that anyone who admitted to violating a company policy during a loss prevention investigation would be terminated, no matter the amount at issue.

Of the 14 employees terminated for dishonest acts, nine were black, and 12 were under age 40.   Only five of the 14 employees terminated were white, and only 2, including Plaintiff, age 50, were over the age of 40.

## SUMMARY JUDGMENT STANDARD

Summary judgment must be granted if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c);  see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Johnson v. Clifton, 74 F.3d 1087, 1090 (11th Cir. 1996).   Not all factual disputes render summary judgment inappropriate; only a genuine issue of material fact will defeat a properly supported motion for summary judgment.   See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).   This means that summary judgment may be granted if there is insufficient evidence for a reasonable jury to return a verdict for the nonmoving party or, in other words, if reasonable minds could not differ as to the verdict.   See id. at 249-52.

In reviewing a motion for summary judgment, the court must view the evidence and all justifiable inferences in the light most favorable to the nonmoving party, but the court may not make credibility determinations or weigh the evidence.   See id. at 254-55;

see also Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000).   The

moving party Aalways bears the initial responsibility of informing the district court of the

basis for its motion, and identifying those portions of the pleadings, depositions,

answers to interrogatories, and admissions on file, together with the affidavits, if any,

which it believes demonstrate the absence of a genuine issue of material fact@and that

entitle it to a judgment as a matter of law. Celotex, 477 U.S. at 323 (internal quotation

marks omitted).

　　　If the moving party discharges this burden, the burden then shifts to the

nonmoving party to go beyond the pleadings and present specific evidence showing that

there is a genuine issue of material fact (i.e., evidence that would support a jury verdict)

or that the moving party is not entitled to a judgment as a matter of law.   See Fed. R.

Civ. P. 56(e); see also Celotex, 477 U.S. at 324-26.   This evidence must consist of more

than mere conclusory allegations or legal conclusions.   See Avirgan v. Hull, 932 F.2d

1572, 1577 (11th Cir. 1991).   Ultimately, summary judgment must be entered where Athe

nonmoving party has failed to make a sufficient showing on an essential element of [his]

case with respect to which [he] has the burden of proof.@Celotex, 477 U.S. at 323.

16

## DISCUSSION

### Race Discrimination

Title VII "makes it unlawful to 'discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race.'" <u>Brown v. Ala. Dep't of Transp.</u>, 597 F.3d 1160, 1174 (11th Cir. 2010) (quoting 42 U.S.C. § 2000e-2(a)(1)).   Implicit in a claim for race discrimination is the contention that some racial animus factored in the adverse employment action at issue. As discussed in detail below, the Court finds no reasonable jury could find Plaintiff was terminated due to any racial animus.   Although termination may seem a harsh result in this case, this Court is not required to agree with Defendant's decision to terminate Plaintiff; the Court must determine whether Defendant's decision was motivated by an unlawful <u>discriminatory</u> reason.   No reasonable jury could find Defendant was motivated to terminate Plaintiff based on racial discrimination.

"[A] plaintiff may use three different kinds of evidence of discriminatory intent: direct evidence, circumstantial evidence, or statistical evidence.   The analytical framework and burden of production varies depending on the method of proof chosen." <u>Standard v. A.B.E.I. Servs., Inc.</u>, 161 F.3d 1318, 1330 (11th Cir. 1998).   Here, Plaintiff contends her claim is based on direct and circumstantial evidence.

*Direct Evidence*

First, Plaintiff attempts to use direct evidence of racial discrimination to prove her

case.   The Eleventh Circuit has defined and explained direct evidence of discrimination

as follows:   Direct evidence is "evidence, which if believed, proves [the] existence of [a]

fact in issue without inference or presumption."   Burrell v. Bd. of Trustees of Ga.

Military Coll., 125 F.3d 1390, 1393 (11th Cir. 1997).   As our precedent illustrates, "only

the most blatant remarks, whose intent could mean nothing other than to discriminate

on the basis of some impermissible factor constitute direct evidence of discrimination."

Rojas v. Fla., 285 F.3d 1339, 1342 n.2 (11th Cir. 2002).   If the alleged statement suggests,

but does not prove, a discriminatory motive, then it is circumstantial evidence. Wilson v.

B/E Aerospace, Inc., 376 F.3d 1079, 1086 (11th Cir. 2004).   Where a statement "could by

inference have more than one possible meaning," it is not direct evidence of

discrimination.   Harris v. Shelby Cnty. Bd. of Educ., 99 F.3d 1078, 1083 n. 2 (11th Cir.

1996).   The Eleventh Circuit has severely limited the type of language constituting

direct evidence of discrimination.   See, e.g., Evans v. McClain of Ga., Inc., 131 F.3d 957,

962 (11th Cir. 1997); Burrell, 125 F.3d 1390, 1393-94 n. 7 (11th Cir. 1997); Earley v.

Champion Int'l Corp., 907 F.2d 1077, 1082 (11th Cir. 1990).   "Remarks unrelated to the

decision-making process itself are not direct evidence of discrimination," Standard, 161

F.3d at 1330, and "biased statement[s], separate in time from the employment decision

under challenge, are not direct evidence of discrimination," <u>Williamson v. Adventist Health Sys./Sunbelt, Inc.</u>, 372 Fed. Appx. 936, 940 (11th Cir. 2010).

As her direct evidence, Plaintiff relies on co-worker Brenda White's testimony regarding the conversation between District Manager Worley and the elderly white customer that occurred "sometime after the 2008 presidential election,"  in which she overheard the customer opine that "[President] Obama stole the election because he was a 'thieving nigger,' just like the bunch of them [pointing to the predominantly African-American deli staff]," and Mr. Worley reply that "these do not steal because I would throw them out on the street." (White Decl., Doc. 36-3).

While Mr. Worley's alleged comment may not be professional or appropriate in the business setting, neither is it direct evidence of racial discrimination.   The evidence does not even suggest that Worley made it in connection with his assessment of Plaintiff's employment or that he made it concurrently with his decision to fire her.   "To qualify as direct evidence of discrimination, [the Eleventh Circuit] require[s] that a biased statement by a decision-maker be made concurrently with the adverse employment event, such that no inference is necessary to conclude that the bias necessarily motivated the decision."   <u>Williamson</u>, 372 Fed. Appx. at 940; <u>see also</u> <u>Bass v. Bd. of Cnty Comm'rs</u>, 256 F.3d 1095, 1105 (11th Cir. 2001).   Ms. White testified she heard Worley make the comment "sometime after the 2008 presidential election," presumably

in November or December of 2008.   Worley terminated Plaintiff some six months later in July 2009.

More importantly, however, Worley's alleged comment does not rise to the level of direct evidence under Eleventh Circuit precedent because even assuming the statement evidenced an inappropriate racial attitude, the fact-finder would have to infer from the comment that the inappropriate racial attitude motivated Worley's decision to terminate Plaintiff.   "[B]y definition then, the evidence is circumstantial." Earley, 907 F.2d at 1081.   Even if such comment were found to be derogatory, it contains no correlation to the adverse action taken by Worley.   Thus, Plaintiff has presented no direct evidence of racial discrimination.

*Circumstantial Evidence*

Because Plaintiff has identified no direct or statistical evidence of discrimination, the Court proceeds to evaluate her circumstantial evidence of discriminatory discharge under the burden-shifting analysis set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), and Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248 (1981).   Under this framework, Plaintiff bears the initial burden of establishing a prima facie case of discrimination by a preponderance of the evidence.   A prima facie case for discriminatory discharge may be satisfied by showing that (1) plaintiff is a member of a protected minority; (2) she was qualified to do the job; (3) she was subject to an adverse

employment action; and (4) she was treated less favorably than a similarly situated individual outside her protected class or was replaced by someone outside her protected class. Maynard v. Bd. of Regents of the Div. of Univs. of the Fla. Dep't of Educ., 342 F.3d 1281, 1289 (11th Cir. 2003); see also Morris v. Emory Clinic, Inc., 402 F.3d 1076, 1082 (11th Cir. 2005) (holding that a "plaintiff does not shift the burden to the defendant"by merely "stating that he was fired or treated unfavorably").  If the plaintiff presents a prima facie case, the burden of production shifts to the defendant to offer a legitimate, non-discriminatory reason for the adverse employment action.   Alvarez v. Royal Atl. Developers, Inc., 610 F.3d 1253, 1264 (11th Cir. 2010). If the defendant meets this burden of production, the burden shifts back to the plaintiff to show that the stated reason is a mere pretext for unlawful discrimination.   Id.

Considering the facts in light most favorable to Plaintiff, the Court finds Plaintiff has presented evidence to support three of the four requirements to establish a prima facie case of discrimination: she is a member of a protected class; she was qualified to do the job; and she was subjected to an adverse employment action.   Thus, the issue here is whether Plaintiff was treated less favorably than a similarly situated individual outside of her protected class or was replaced by a person outside of her protected class.   The record contains no evidence that Plaintiff was replaced by a person outside of her protected class, and thus, the Court must determine whether Plaintiff has presented a

proper comparator.

To establish that a defendant treated similarly situated employees more favorably, a plaintiff must show that her comparators "are similar in all relevant respects." Holifield v. Reno, 115 F.3d 1555, 1562 (11th Cir. 1997). To make this determination, the Court must evaluate "whether the employees [were] involved in or accused of the same or similar conduct and [were] disciplined in different ways." Burke-Fowler v. Orange Cnty., Fla., 447 F.3d 1319, 1332 (11th Cir. 2006) (internal quotation marks omitted). The quantity and quality of the comparator's misconduct must be "nearly identical" to the plaintiff's misconduct "to prevent courts from second-guessing employers' reasonable decisions." Id. (internal quotation marks omitted). Also, proffered comparators' actions are only relevant if the plaintiff shows that the decision maker knew of the prior similar acts and did not discipline the rule violators. See Jones v. Gerwens, 874 F.2d 1534, 1542 (11th Cir. 1989). Knowledge of a prior act cannot be imputed to a decision maker, because "[d]iscrimination is about actual knowledge, and real intent, not constructive knowledge and assumed intent." Silvera v. Orange Cnty Sch. Bd., 244 F.3d 1253, 1262 (11th Cir. 2001).

Plaintiff points to Store Manager Foster and District Manager Worley as alleged comparators and argues they both engaged in similar behavior -- failure to pay full price for deli items consumed on the premises – but unlike Plaintiff, they were not discharged.

The Court finds, however, that neither Worley nor Foster is a proper comparator.

First, there is nothing to indicate that Worley or Foster had similar job duties or responsibilities to Plaintiff. Plaintiff was a deli associate while Worley was the District Manager, and Foster was the Store Manager.   See Mathis v. Wachovia Bank, 255 Fed. Appx. 425, 431 (11th Cir. 2007) (finding improper comparator where Plaintiff was a supervisor and alleged comparator was not).

More importantly, neither Foster nor Worley is a proper comparator because unlike Plaintiff, neither was discovered engaging in any misconduct during the relevant loss prevention investigation.   Because they were not discovered engaging in any misconduct, they were not accused of any misconduct.   An employee who "was not accused of the same or similar conduct as [the plaintiff] . . . is not similarly situated for purposes of establishing a prima facie case."   Holifield v. Reno, 115 F.3d 1555, 1563 (11th Cir. 1997).

Moreover, because the loss prevention investigation failed to reveal any misconduct from Worley or Foster, Defendant had no knowledge of any misconduct by them. "Employees are not 'similarly situated' if management is aware of one's improper conduct, but not aware of the others' conduct." Amos v. Tyson Foods, Inc., 153 Fed. Appx. 637, 647 (11th Cir. 2005).   Plaintiff, and *every* other individual discovered during the investigation engaging in any type of dishonest conduct, no matter their race, was

23

terminated; neither Worley nor Foster was discovered.   There is no evidence to indicate at that time that Worley, the person who terminated Plaintiff, knew Foster engaged in any improper discounting, nor is there any evidence that management knew Worley engaged in any improper discounting.

The Court finds Plaintiff's argument that Worley's and Foster's failure to confess and voluntarily implicate themselves in any misconduct somehow imputes knowledge of their misconduct on Defendant, to be without merit.   Plaintiff cites no legal authority for such theory, and the Court on its own could find no legal support for the proposition that a defendant would be considered to have knowledge of misconduct from a decision-maker's failure to confess to a similar dishonest act as a plaintiff who gets caught engaging in that act.

The Court also finds Plaintiff's bald assertion that "there were other white and younger deli employees who should have been in the loss prevention investigation, including [Store Manager] Mr. Foster, but Mr. Foster chose not to implicate these employees . . . even though he had knowledge of the wrong doings," to be wholly unsupported by the record.   [Pl. Response Brief, p. 10].   Plaintiff points to no evidence to support this conclusory assertion.   "[C]onclusory assertions . . ., in the absence of supporting evidence, are insufficient to withstand summary judgment."   Holifield, 115 F.3d at 1564 n. 6.   While there is evidence that a white employee worked in the deli

24

section in February 2009, there is no evidence indicating whether she was still employed in July 2009, when the loss prevention investigation took place, or, if she was employed, whether she discounted any food, or whether Foster or Worley knew she was discounting food.   More importantly, no other deli employee was discovered discounting food during the relevant investigation.   The record firmly establishes that Plaintiff was the *only* deli employee caught (on video) failing to pay full price for a deli item consumed on the premises during the relevant loss prevention investigation.   For the foregoing reasons, the Court finds Plaintiff fails to proffer a proper comparator to establish a prima facie case of racial discrimination.

Although Plaintiff fails to establish a proper comparator, the Court is mindful that Plaintiff's burden at the prima-facie stage is not onerous, and there are ways to raise the inference of discrimination other than showing that a similarly situated individual from outside the protected class was treated more favorably.   "[T]he plaintiff's failure to produce a comparator does not necessarily doom the plaintiff's case.   Rather, the plaintiff will always survive summary judgment if [s]he presents circumstantial evidence that creates a triable issue concerning the employer's discriminatory intent." Smith v. Lockheed-Martin Corp., 644 F.3d 1321, 1328 (11th Cir. 2011).   "A triable issue of fact exists if the record, viewed in a light most favorable to the plaintiff, presents a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional

discrimination by the decision-maker."   Id.   If a plaintiff fails to show the existence of a

similarly situated employee and no circumstantial evidence of discrimination is present,

summary judgment for the defendant is appropriate.   Holifield, 115 F.3d at 1562

(citation omitted).

        For the same reasons discussed below in its discussion on pretext, the Court finds

that Plaintiff fails to present a "convincing mosaic of circumstantial evidence" from

which a reasonable jury could infer her termination was racially motivated.

Lockheed-Martin Corp., 644 F.3d at 1328.   Although termination in this case may seem a

harsh and even unfair response given that Plaintiff was terminated over her failure to

pay thirty-six cents, "the reasonableness of [Defendant's] disciplinary policies is not a

consideration."     Abel v. Dubberly, 210 F.3d 1334, 1339 n. 5 (11th Cir. 2000).   As the

Eleventh Circuit has said before, "an employer may fire an employee for a good reason,

a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its

action is not a *discriminatory* reason."   Id. (internal quotation marks and citation

omitted).   This Court is not required to agree with the employer's proffered reasons for

discharge; the crucial question is whether the employer was motivated by a racially

discriminatory bias.   See, e.g., Standard v. A.B.E.L. Servs. Inc., 161 F.3d 1318, 1333 (11th

Cir. 1998) (citing Combs v. Plantation Patterns, 106 F.3d 1519, 1538 (11th Cir. 1997)).

Here, as discussed in detail below, no reasonable jury could infer that Defendant's

decision to terminate Plaintiff was racially motivated.   Thus, Plaintiff fails to create a prima facie case of discriminatory discharge.

While Plaintiff's failure to establish a prima facie case is dispositive of her discriminatory termination claim, the Court finds that even if she was able to establish a prima facie case, she fails to establish that Defendant's legitimate, non-discriminatory reason for terminating Plaintiff is merely pretext for racial discrimination.

Defendant has met its "exceedingly light" burden and established a legitimate, non-discriminatory reason for terminating Plaintiff – her dishonest conduct in failing to pay full price for her drink.   Holifield, 115 F.3d at 1564.   Thus, the presumption of discrimination disappears.   Lockheed-Martin Corp., 644 F.3d 1325-26.   The inquiry now proceeds to a "new level of specificity," whereby the plaintiff must prove by a preponderance of the evidence that the defendant's reason is mere pretext for unlawful discrimination.   Id. at 1326 (citations omitted).

A plaintiff may demonstrate that an employer's reason is pretextual by identifying "such weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable fact finder could find them unworthy of credence."   Ritchie v. Indus. Steel, Inc., 426 Fed. Appx. 867, 872 (11th Cir. 2011) (citing Combs, 106 F.3d at 1538).   Rather than "simply quarreling with the wisdom of [the employer's] reason," the plaintiff

"must meet that reason head on and rebut it."   Id. (quoting Chapman, 229 F.3d at 1030).

Here, Plaintiff fails to establish pretext.   Again, this Court cannot consider the reasonableness of Defendant's disciplinary policy; the Court can only consider whether the discipline was racially motivated.   Abel, 210 F.3d at 1339 n. 5.   Here, no reasonable jury could find Plaintiff's termination was motivated by a racially discriminatory bias. On the contrary, the uncontroverted facts show that Defendant did not terminate Plaintiff because of her race: Defendant terminated every individual discovered during the investigation engaging in any dishonest acts, the majority of whom – nine of the 14 – were black.   Moreover, it is undisputed that Mr. Worley solicited Plaintiff's re-employment when he initially re-hired her.   Thus, not only did Mr. Worley re-hire Plaintiff, she came back to work upon his request.   When the same individual is responsible for hiring an employee and then ultimately firing an employee, a "permissible inference" arises "that no discriminatory animus motivated [that person's] actions." Williams v. Vitro Serv. Corp., 144 F.3d 1438, 1443 (11th Cir. 1998).

Despite Plaintiff's attempts at trying to manufacture a discriminatory animus on the part of Defendant, it simply does not exist.   Plaintiff's only evidence of any kind of racial bias is Worley's alleged racial remarks.   However, these remarks are not enough to satisfy Plaintiff's burden and are insufficient evidence, on their own, from which a jury could reasonably infer that race discrimination was a motivating factor in Worley's

decision to terminate Plaintiff.   The Eleventh Circuit has held that

> stray comments made by a decision-maker *when read in conjunction with the entire record may* constitute circumstantial evidence of [the decision-maker's] discriminatory attitude, and, if so, the court must then determine whether such circumstantial evidence, *along with other evidence (including the plaintiff's prima facie case)* might lead a reasonable jury to disbelieve the decision-maker's proffered reason.

Truss v. Harvey, 179 Fed. Appx. 583, 587 (11th Cir. 2006) (quoting Ross v. Rhodes

Furniture, Inc., 146 F.2d 1286, 1292 (11th Cir. 1998) (internal quotation marks omitted)

(emphasis added).   Plaintiff has presented no other evidence of any kind of

discriminatory bias to support a finding of pretext.   See id. at 588 (citation omitted).

Moreover, the alleged comments were not made in a decision-making context.

"Although a comment unrelated to a termination may contribute to a circumstantial case

for pretext . . ., it will usually not be sufficient absent some additional evidence

supporting a finding of pretext."   Scott v. Suncoast Beverage Sales, Ltd., 295 F.3d 1223,

1229 (11th Cir. 2002) (citation omitted).   Ultimately, the record contains insufficient

evidence from which a reasonable jury could find Defendant acted with a discriminatory

intent to terminate Plaintiff.   Thus, Defendant is entitled summary judgment on

Plaintiff's race discrimination claim.

## Age Discrimination

Plaintiff also claims that she was unlawfully terminated based on her age in

violation of the ADEA.   The ADEA prohibits employers from discriminating against

employees who are at least 40 years old on the basis of age.   29 U.S.C. §§ 623(a)(1), 631(a).   A plaintiff must prove through direct or circumstantial evidence "that age was the 'but-for' cause of" the discharge.   Mora v. Jackson Mem'l Found., Inc., 597 F.3d 1201, 1204 (11th Cir. 2010) (citing Gross v. FBL Fin. Servs., Inc., 557 U.S. 167 (2009)).

Since Plaintiff has presented no direct evidence that Defendant discharged her because of her age and has relied, instead, on circumstantial evidence, the burden-shifting analysis set forth in McDonnell Douglas also governs her ADEA claim. See, e.g., Bogle v. Orange Cnty. Bd. of Cnty. Comm'rs, 162 F.3d 653, 656 (11th Cir. 1998). Pursuant to this familiar framework, Plaintiff first has to establish a *prima facie* case of discrimination by showing that she "(1) was a member of the protected age group; (2) was subjected to adverse employment action; (3) was qualified to do the job; and (4) was replaced by or otherwise lost a position to a younger individual."   Chapman v. AI Transp., 229 F.3d 1012, 1024 (11th Cir. 2000).   If Plaintiff establishes her *prima facie* case, Defendant "must articulate a legitimate, nondiscriminatory reason for the challenged employment action."   Id.   At that point, Plaintiff must proffer evidence sufficient to permit a reasonable fact-finder to conclude that the employer's reasons are a pretext for discrimination.   Id.

Plaintiff clearly fails to establish a *prima facie* case of age discrimination.   The Court agrees with Defendant that Plaintiff's age discrimination claim is unclear and

seems an afterthought to her Title VII claim.   Any claim Plaintiff may assert for discriminatory discharge based on her age fails because Plaintiff has put forth no evidence that she was replaced by or otherwise lost her position to a younger individual. Indeed, this Court has absolutely no evidence whatsoever as to who, if anyone, was hired in the deli department after Plaintiff's termination, much less if they were younger than Plaintiff.   The evidence is clear that Defendant terminated everyone discovered taking merchandise from the store without paying full price, regardless of age.   Of the 14 employees terminated, only <u>two</u> were over the age of 40, Plaintiff and one other co-worker.   Indeed, any claim for discriminatory discharge due to Plaintiff's age is completely belied by the fact that <u>nine</u> of the fourteen employees terminated were even under the age of 25.

Plaintiff also appears to assert a failure to promote claim by including an assertion that before her termination she was not selected for an assistant deli manager position. To establish an ADEA age discrimination claim based on a failure to promote, Plaintiff must show the following: "(1) she was a member of a protected age group; (2) she was subject to an adverse employment action; (3) a substantially younger person filled the position that she was seeking; and (4) she was qualified to do the job for which she was rejected."   <u>Howell v. Compass Group</u>, 448 Fed. Appx. 30, 34 (11th Cir. 2011) (citing <u>Bogle</u>, 162 F.3d at 656-57).   However, Plaintiff cannot establish a prima facie case of age

discrimination based on failure to promote because there is absolutely no evidence that she ever applied for any such position.   Id. ("To establish her discriminatory failure to promote claims, [plaintiff] had to show that she applied for the . . . job opening.").

This Court is aware that there is an exception to the application requirement: "[W]here an employer does not formally announce a position, but rather uses informal and subjective procedure to identify a candidate, a plaintiff need not show . . . that [s]he applied for the position – only that the employer had some reason to consider him for the post."   Vessels v. Atlanta Indep. Sch. Sys., 408 F.3d 763, 768 (11th Cir. 2005). However, the record contains no evidence at all on this issue except for Plaintiff's statement that a younger employee was hired.  It is Plaintiff's burden to establish a prima facie case, and she has failed to do so.   Thus, Defendant is entitled to summary judgment on any claims under the ADEA.

## CONCLUSION

For the foregoing reasons, although Defendant's Motion to Strike [Doc. 40] is **DENIED**, Defendant's Motion for Summary Judgment [Doc. 32] is hereby **GRANTED** as to all claims.


**SO ORDERED** this 21st day of August, 2012.

<u>S/   C. Ashley Royal</u>
C. ASHLEY ROYAL
United States District Judge

SSH